JAMES F. BRIGGS, as *Administrator of the Estate of Mrs. R. B. Fitch, deceased*, v. THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY.

No. 8127.

1. ADMINISTRATOR OF MORTGAGEE — *Power to Bid in Property.* An administrator receiving as assets of the estate of his decedent a promissory note secured by mortgage, and having obtained a judgment on the note and a decree of foreclosure, may bid in the land at the foreclosure sale as administrator in satisfaction of the indebtedness, wholly or in part, and the sheriff's deed will pass the title to him as administrator.

2. CONDEMNATION PROCEEDINGS — *Improvements — Sheriff's Deed — Title.* After A. had mortgaged a tract of land, he executed a deed to a railroad company for a strip across the same, and the company constructed its railway, erected a depot, and made other improvements upon said strip. The assignee of the mortgage brought his action to foreclose it, making the railroad company a party, and it answered, setting up a right to occupy the strip by virtue of said deed from A., but by the decree it was barred, enjoined and cut off from claiming any estate or interest in the mortgaged premises, which were sold by the sheriff, and upon confirmation he executed to the purchaser a deed for the same. Afterward, in a proceeding instituted by the railroad company, the strip occupied by it was condemned, but no award was made by the commissioners, nor by the court upon appeal, for the value of said improvements. *Held*, That the title to the improvements passed by the sheriff's deed as part of the real estate, and the purchaser was entitled to an award for their value.

*Error from Woodson District Court.*

ON March 29, 1886, Loretta A. Ault and John A. Ault, husband and wife, being the owners of lot 3, plat of out-lots to the city of Yates Center, executed their promissory note for $500 to Scott & Brier, and secured the same by mortgage on said premises, and the mortgage was duly recorded on the same day. On April 7, 1886, the note and mortgage were assigned to Mrs. R. B. Fitch. On July 14, 1887, the Aults conveyed to The Chicago, Kansas & Western Railroad Company a right of way and strip of land 150 feet in width on each side of the center line of the track of the railroad of said company where the same was then located across, over and through said lot. At said time the railroad company was constructing its line of railroad across said lot under a claim of right by virtue of certain condemnation proceedings which were invalid, and ever since said time the company has operated its railroad over and across said premises. Mrs. R. B. Fitch having died, James F. Briggs was, on November 5, 1888, duly appointed, and he qualified as administrator of her estate. An action was commenced to recover upon said note and to foreclose the mortgage. The railroad company was made a party, and on December 12, 1889, filed an answer setting up a right to occupy the strip 300 feet in width by virtue of said deed from the Aults. On March 12, 1890, judgment was rendered against the Aults for $825, bearing interest at the rate of 12 per cent. per annum, and the whole tract was decreed to be sold after six months without appraisement, to pay the judgment, interest, and costs; but the cause was continued until June term as between the plaintiff and the railroad company, the latter expressly

agreeing to waive the stay, so that the land might be sold at the expiration of the six months from date of the decree of foreclosure against the Aults. On June 4, 1890, the cause came on for further hearing between the plaintiff and the railroad company, both parties appearing by their counsel; and thereupon it was decreed that the railroad company be, by the sale to be made under the decree of March 12, 1890, "forever barred, foreclosed, enjoined and cut off from claiming any interest or estate in or to the real estate, or any part thereof, described in plaintiff's said amended petition, to wit: lot 3, in Yates's plat of outlots in the city of Yates Center." On September 16, 1890, an order of sale was issued, under which, in compliance with the decree of the court, the land outside of the strip was first sold for the sum of $50 to James F. Briggs, as administrator, and the strip was then bid off by him for $100. An attorney of the railroad company was present at the sheriff's sale, but neither he nor any other representative of the company made any statement, or in any manner participated in the sale. Afterward the sale was confirmed by the court, and on November 3, 1890, a sheriff's deed was executed to said James F. Briggs, as administrator.

On November 20, 1890, the railroad company made application to the district judge for the appointment of commissioners to condemn a right of way over and across said premises, and such commissioners were appointed, and they duly qualified, and on November 28, 1890, gave notice that they would proceed on December 30, 1890, to condemn such right of way. These proceedings were in the usual form, and made no mention of the fact that the railroad company was already in possession of the strip and had made im-

provements thereon.   On January 6, 1891, the commissioners duly filed their report, allowing $124 for the land occupied and $30 for damages to the remainder of the tract.   No mention was made of any improvements.   On January 15, 1891, James F. Briggs, as administrator and as owner of the land, filed an appeal bond, which was duly approved.   On the trial of the appeal, June 1 and 2, 1891, it was agreed that, since July 14, 1887, and prior to September 8, 1888, the railroad company had constructed and erected upon said strip the improvements which at the time of the condemnation were respectively described and of value as follows:  Dwelling-house, fences around same and outbuildings inclosed therewith, $700 ;  tool-house, $50 ;  building adapted for use as depot and office, $1,200 ;  embankment, including poles and wires and the ties and steel rails of main and side-tracks as constructed and graded, $1,000.   It was also agreed that the value of the right of way taken, exclusive of said improvements, was $124, and the damages to the lands not taken $30, and these items are all that the court below allowed.   The question submitted for decision is as to whether Briggs, as administrator, was entitled to recover the value of the improvements, amounting to $2,950, or not.   The opinion herein was filed March 7, 1896.

*Stephenson & Hogueland*, and *J. B. Larimer*, for plaintiff in error.

*A. A. Hurd, O. J. Wood*, and *W. Littlefield*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. :  I.  The railroad company takes the position that James F. Briggs, as administrator of the

estate of Mrs. R. B. Fitch, deceased, could not acquire
title to said lot, and therefore had no right to appeal.
Authorities are cited upon the point that an executor
or administrator cannot, either directly or indirectly,
purchase the real estate of his decedent which he has
been ordered by the probate court to sell. This is
forbidden as well by public policy as the express terms
of section 132 of the act respecting executors and ad-
ministrators. (Ch. 37, Gen. Stat. 1889.) But this was
land of the Aults, subject to a mortgage lien upon
which it was the duty of the administrator to realize
for the benefit of the estate, and no consideration of
public policy forbade him from taking in the land to-
ward the payment of the indebtedness, especially if it
could not be sold for cash. Of course, the adminis-
trator is bound to account in the probate court to the
heirs of Mrs. Fitch and the creditors of her estate for
this land, to which he holds the title only in his rep-
resentative capacity. The deed was valid, and passed
the title to him. (*Valentine v. Belden*, 20 Hun, 537, 541,
542; *Lockman v. Reilly*, 95 N. Y. 64, 71; *Stevenson v.
Polk*, 71 Iowa, 279, 290, 291.)

II. It seems a hard case when a railroad company
is required to pay the value of improvements which
it has placed upon a strip of ground occupied as a
right of way, but it is a familiar principle that on a
mortgage sale the title of the purchaser relates back
to the execution of the mortgage, and cuts off inter-
vening rights and equities acquired from the mort-
gagor by purchase; and this is applicable to all land-
owners alike. The decree of June 4, 1891, followed
by the sheriff's deed executed in pursuance thereof,
divested the railroad company of its title, and "for-
ever barred, foreclosed, enjoined" and cut it off "from
claiming any interest or estate in or to the real estate,

or any part thereof." Unless, therefore, we may judicially declare that these buildings and structures were not and are not real estate, we must hold that they passed by the sheriff's deed to the purchaser at his sale. Attention has been called to the fact that for the purposes of taxation such improvements are treated as personal property, but this applies as well to the lands occupied for right of way, depot grounds, and otherwise for the convenient and daily operation of the road. (Ch. 107, art. 7, Gen. Stat. 1889.) Whether railway property be treated as real or personal, however, for purposes of taxation, is a mere matter of convenience, and does not have the effect of transforming the one into the other. If the right of possession of a crowbar or a lifting-jack used by the railroad company should be in dispute, the proper form of action to settle it would be replevin; but if the right to occupy a strip of land for its road, or a lot for depot grounds, were in controversy, it would be necessary to resort to an action of ejectment for the determination of the question. These structures were real property. What right, if any, the company would have had prior to the foreclosure sale to remove them, or to obtain a condemnation without paying their value, is not involved in this case. (For some authorities on this subject, see *Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 Kan. 158.) Before the company instituted its condemnation proceeding on November 20, 1890, it had been cut off and barred from claiming any interest in said lot 3, which included these structures; and the act of March 2, 1889, was in force, expressly prohibiting the removal of buildings from mortgaged premises without written permission. (Gen. Stat. 1889, ¶ ¶ 3900, 3901, 3902.)

The judgment will therefore be reversed and the

cause remanded, with directions to allow the plaintiff the sum of $3,104 as an award of damages upon condemnation, to be paid within a short time, to be fixed by the court, together with costs.

All the Justices concurring.