[Civ. No. 570.   Third Appellate District.—April 21, 1909.]

SAN DOMINGO GOLD MINING COMPANY, a Corporation, Respondent, v. GRAND PACIFIC GOLD MINING COMPANY, a Corporation, et al., Appellants.

Mining Claim—Execution Sale—Sheriff's Deed—Relation to Attachment.—When mining claims were attached at suit of a creditor of the owner, and were sold under execution, the sheriff's deed obtained thereunder relates to the date · of the levy of the attachment, if the attachment proceedings were regular.

Id.—Action to Determine Ownership—Sheriff's Deed to Plaintiff's Predecessor—Objection to Attachment Bond—Appeal—Defect not Shown.—In an action to determine plaintiff's ownership of the mining claim, in which he claims title under the sheriff's deed and attachment, an objection to the regularity of the proceedings on account of a defective attachment bond cannot be considered upon appeal, where the record contains no evidence showing the existence of such defect.

Id.—Presumptions upon Appeal—Burden upon Appellants.—Error cannot be presumed upon appeal, but all intendments are in favor

of the action of the trial court; and when the record is silent as to an objection urged by the appellants, the appellate court cannot assume that facts stated by appellants were conceded by the respondent, or that any evidence was offered in aid of the objection. The burden was upon appellants to show in the record that the objection was supported by the facts.

ID.—SHERIFF'S DEED TO ADMINISTRATRIX.—The objection that the title of the plaintiff accrued under the sheriff's deed to an administratrix, who conveyed to plaintiff's predecessor, cannot be urged by anyone not in privity with the estate nor with the judgment debtor whose property was sold by the sheriff. Such title is not void, but at most voidable at the instance of those whom the administratrix represents.

ID.—CONFIRMED TITLE FROM ESTATE—WRITTEN AUTHORITY TO CONVEY RESIDUE—OBJECTION BY STRANGER TO TITLE UNTENABLE.—When the estate owned one-third of the legal title, and its right passed by a confirmed purchase and deed from the administratrix, and the owner of the other two-thirds thereof in writing authorized the conveyance of the remaining two-thirds thereof by the administratrix to the purchaser, the legal effect of his act cannot be questioned by any stranger to the title.

ID.—DEED NOT VOID—FORM OF ACKNOWLEDGMENT—CURE OF DEFECT— PROTECTION OF BONA FIDE HOLDER OF TITLE—OMISSION IN RECORD. The recorded deed by the administratrix could not be void in any event, notwithstanding a defective acknowledgment by her as "widow," though cured by a subsequent deed, with proper acknowledgment. If plaintiff's predecessor took title thereunder as a *bona fide* purchaser, as against the defendants, the benefit of that title would inure to plaintiff as the successor in interest, whether the subsequent deeds were recorded or not; but if the plaintiff took in ignorance of any rights of the defendants, any defect in the first acknowledgment would be immaterial.

ID.—COVENANT NOT RUNNING WITH LAND—BINDING IN EQUITY ON PURCHASER WITH NOTICE.—A covenant or agreement entered into between patentees, if known to plaintiff's predecessor, as intended to qualify the title conditionally, would be binding in equity upon it, and upon any person taking title with notice thereof, though it may be only a personal covenant not running with the land. Such covenant is not binding upon the purchaser because he is assignee of the party who makes the agreement, but because he has taken the estate with notice of a valid agreement concerning it which he cannot equitably refuse to perform.

ID.—AGREEMENT BETWEEN PATENTEES TO WORK MINE UNTIL PAID FOR —NONPERFORMANCE—STOCK SECURITY—DEED NOT CONTEMPORANE- OUS—PURCHASER PROTECTED.—A prior agreement between patentees of a mine, who subsequently convey the title to a corporation, that

they were to have the exclusive right to work the mine until they are paid the purchase money therefor, with a transfer of shares of its stock as security, though evidently intended to be an agreement for the sale and purchase of the mining property, but which is not contemporaneous with the deed, nor between the same parties, and in pursuance of which nothing was ever done, does not affect its record title, nor charge a purchaser therefrom with any notice of such agreement.

APPEAL from a judgment of the Superior Court of Calaveras County, and from an order denying a new trial.   A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

A. Everett Ball, and John F. Davis, for Appellants.

Snyder & Snyder, and Chickering & Gregory, for Respondent.

BURNETT, J.—The action was begun June 22, 1904, for the purpose of enjoining defendants from mining upon or removing ore from two certain placer mining claims, known as the "Bully Boy" and the "Buckeye."

The defendants disclaimed any interest in the latter, but asserted title to the former claim consisting of about seventy acres and the question in dispute is as to the ownership of this "Bully Boy" claim.   Plaintiff relies upon title by mesne conveyances from the patentees and also by prescription.

The deeds received in evidence seem to connect plaintiff with the original source of title.   The conveyance, however, from .one W. A. Keefer to the Jupiter Gravel Mining and Water Electric Power Company, dated November 21, 1896, must be disregarded, as it is admitted that the said Keefer was adjudged a bankrupt in 1887.   But, as pointed out by respondent, this deed is not a necessary link in plaintiff's chain of title, for the corporation known as the Jupiter Deep Blue Gravel Hydraulic Mining Company acquired the title on November 4, 1879, and did not purport to convey it to Keefer until June 14, 1884.   On April 9, 1883, an attachment was issued in the case of *Manuel* v. *Jupiter Deep Blue Gravel Hydraulic Mining Company* and levied upon the property on April 10, 1883.   Judgment was rendered in said

10 Cal. App.—27

action in favor of plaintiff on September 8, 1884, and on December 10, 1887, the property was sold under execution to Eliza S. Baker, as administratrix of the estate of Samuel Baker, deceased, and a sheriff's deed therefor given to her on July 6, 1888. Eliza S. Baker, as administratrix, on April 9, 1889, conveyed the property to plaintiff's immediate predecessor in interest, the Jupiter Gravel Mining and Water Company. The record shows that in the matter of the estate of said Samuel Baker, deceased, a decree was entered confirming the sale of all interest of said estate to the said company.

It is not disputed that the sheriff's deed related back to the date of the attachment, if the attachment proceedings were regular. "The property is sold under the final process issued on the judgment, but the deed made to the purchaser at the sale, as the last of the series of acts, takes effect from the date of the levy of the attachment, as the first of the series of acts, and perfects the title to the property from the day when it was taken by the officer, for the satisfaction of the judgment." (*Porter* v. *Pico,* 55 Cal. 174.)

The record upon its face, therefore, shows the title to be in respondent, but it is the contention of appellants that a close inspection will reveal certain infirmities that invalidate the apparent title and render indefensible the finding of the trial court "that plaintiff is and ever since the 28th day of June, 1898, has been, the owner" of said mining claim. We think, however, the contention of appellants is untenable.

In reference to said sheriff's deed to Eliza Baker, it is admitted that it conveyed all interest of the said Hydraulic Mining Co. No. 1 which it had September 8, 1884, the date of the judgment, but it is denied that it relates back to the time of the levy of the attachment for the reason that the undertaking in said attachment proceeding was defective, and that on motion for a dissolution—the court so found, but allowed the plaintiff to file a new undertaking "*nunc pro tunc,*" thereby going beyond the jurisdiction of the court. But waiving the question whether that consideration could be invoked in this action, since it does not appear that any motion was made in the original action to dissolve the attachment, it is sufficient to say that the record contains no evidence of any defect in said undertaking or of any such order made by the court. We cannot, of course, presume error

and all intendments are in favor of the action of the trial
court. All that appears as to the point is the objection of
counsel in the following language: "We object, in addition
to the objection that it is not rebuttal, that the attachment
is void, as there was no proper undertaking on attachment.
The court, on defendant's motion to dissolve the attachment,
July 5, 1884, allowed a new undertaking filed *nunc pro tunc.*"
As the record before us is silent as to the matter, we can-
not assume that the facts as stated by appellant were conceded
by respondent or that any evidence was offered in aid of the
objection. The burden was upon appellants to show that
the objection was supported by the facts, and this they failed
to do.

The claim that the deed from Eliza Baker, administratrix,
to the Jupiter Gravel Mining and Water Company of Sep-
tember 13, 1888, was void because acknowledged by her as
"Eliza S. Baker, widow," is without merit. If any such de-
fect existed it was cured by another deed of April 9, 1889,
executed by the same grantor. In reply to appellants' sug-
gestion that this deed conveyed only the interest of the estate,
which was one-third of the property, it is only necessary to
allude to the fact that the owner of the other two-thirds in
writing authorized the conveyance, and the legal effect of his
act could certainly not be questioned by anyone who is a
stranger to his title. But we deem to be sound and unan-
swerable this statement by respondent: "The deed would not
be void in any event, even if not recorded. Defendants do
not claim under Eliza Baker and if the predecessor of the
plaintiff was a *bona fide* holder as against the original loca-
tors and defendants, the benefit of that *bona fide* holding
would now inure to plaintiff even if none of the subsequent
conveyances had been recorded." It is apparent, therefore,
that any defect in the acknowledgment must be immaterial
if, as it sufficiently appears from the evidence, plaintiff at
the time it received its deed was ignorant of any outstanding
title in appellants.

The position is equally untenable that the conveyance to
Eliza Baker was void for the reason that she was the ad-
ministratrix of an estate and therefore could not purchase
property at execution sale. It would be an anomalous and
manifestly inequitable doctrine that anyone not in privity
with the judgment debtor or interested in the estate could

profit by any such irregularity. The fact must be that the proceeding is not void but simply voidable at the instance of those whom the administrator in his official character represents. A subsequent purchaser takes a good title although the administrator may be refused credit in his account for the amount expended. In *Briggs* v. *Chicago K. & W. R. Co.,* 56 Kan. 526, [43 Pac. 1131], it is held that ''An administrator receiving as assets of the estate of his decedent a promissory note secured by mortgage and having obtained a judgment on the note and a decree of foreclosure, may bid in the land at the foreclosure sale as administrator in satisfaction of the indebtedness, wholly or in part, and the sheriff's deed will pass the title to him as administrator.'' To the same effect are *Stevenson* v. *Polk,* 32 N. W. 340, and *Lockman* v. *Riley,* 95 N. Y. 64.

The case of *Sedgwick* v. *Sedgwick* (Cal.), 4 Pac. 570, cited by appellants, while containing language to the effect that an executor or administrator has no authority to bid in property for the estate, and that such a sale is void, presented an entirely different legal aspect from the case at bar. That action was brought by the judgment debtor against the estate for damages. The only parties who could contest the sale were before the court and the validity of the purchase was directly involved. The plaintiff as the basis of his action probably insisted that the sale was invalid, and no doubt the defendant urged the same ground for the conclusion that it could not be held for damages. At any rate, from the meager report we have of the case we are satisfied that the decision was right although the language used must be limited to the peculiar facts therein involved.

The contention in which appellants apparently have the most confidence is, as stated by them: ''That by the agreement with Keefer contemporaneous with the deed to the Jupiter Deep Blue Gravel Hydraulic Mining Company, the deed was to become operative only upon the payment of the purchase price of the property which was never paid and that all persons, including the respondent, had full notice of the rights of appellants and took subject to said rights.''

The said agreement which it is insisted was contemporaneous with the deed and should be construed with it, as far as material, is in the following language: ''This indenture made the 21st day of May, A. D. 1878, by and between W. A.

Keefer, party of the first part, and C. Hammerschmidt'' and the other patentees—mentioning their names and respective interests in the mine—the parties of the second part, ''Wit-. nesseth that whereas, the said parties of the second part, who are the owners of the Bully Boy Placer Mine Company's property described as follows: . . . for and in consideration of the sum of one dollar to them paid, and other considerations, to wit, 12,960 shares of the capital stock of the Jupiter Deep Blue Gravel Hydraulic Mining Company, to be held by the parties of the second part, as collateral security until the payment to them by the party of the first part of the sum of $2.50 per share of said capital stock; and it is further agreed between the party of the first part and the parties of the second part that the parties of the second part shall have the exclusive right to drift the gravel and extract the gold from the same and enjoy all the rights and benefits for such labor until such time as their claims under this contract are satisfied.

''And it is hereby agreed that the parties of the second part shall, as fast as possible to do so, complete their title by United States patent, which has been applied for and deliver the same to the party of the first part.

''Witness my hand and seal this 21st day of May, 1878.

''W. A. KEEFER.''

This instrument was acknowledged by said Keefer June 30, 1878, and recorded July 22d following.

The deed, however, was in the usual form, dated May 22, 1878, and was executed by the patentees to the said Jupiter Deep Blue Gravel Hydraulic Mining Company, and no reference was made therein to any other instrument or agreement.   This deed was recorded June 14, 1878.   Parol evidence was admitted ''that it was understood in the first place that two of the owners should sign the deed so as to give Keefer a chance to let people understand that he could sell the mine or incorporate—to give him a chance to handle the mine.'' The two signed and ''then the others came in and all signed the deed.''

It is clear that in order to overcome the apparent record title of respondent it must be held either that the said agreement and deed in legal effect disclose the equitable title to be in the patentees or that respondent at the time of its pur-

chase of the land had actual or constructive notice of facts sufficient to put it upon inquiry as to the claim of appellants.

The said agreement signed only by Keefer is plainly a personal covenant on his part and not one running with the land. (Civ. Code, secs. 1460, 1461, and 1462.) This is not seriously contested by appellants and we shall therefore not discuss it. It is claimed, though, that we have a case for the operation of the doctrine announced in *Bryan* v. *Grosse,* 155 Cal. 132, [99 Pac. 499], and *Hunt* v. *Jones,* 149 Cal. 300, [86 Pac. 686], and other decisions to the effect that "his conscience is bound by the covenant, whether in law it runs with the land or not. The precise form of the nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding upon him merely because he stands as an assignee of the party who makes the agreement but because he has taken the estate with notice of a valid agreement concerning it which he cannot equitably refuse to perform."

But respondent does not stand in the relation of assignee to Keefer who made the agreement. And there is nothing in the record itself that would apprise plaintiff of the claim that the transaction in which said Jupiter Mining Company was concerned amounted to a conditional sale or anything less than what the deed imports. Keefer enters into an agreement with the patentees that they may have the exclusive right to work the mine until they are paid the purchase price and for further security he transfers to them certain shares in said mining company upon consideration that they will convey the property to said Keefer. The instrument is somewhat awkwardly drawn, but it was undoubtedly intended to be an agreement for the sale and purchase of the mining property.

The record does not show, however, that anything was ever done in pursuance of said agreement. As we have seen, on the next day the patentees execute a deed absolute in form— not to Keefer—but to a corporation to whose interest respondent has succeeded. The instruments are therefore not contemporaneous, not between the same parties and the record discloses no connection whatever between the rights and obligations accruing to Keefer through said agreement and

those of the mining company growing out of said deed. No one looking at the record would have any reason to conclude that the grantors reserved any interest in the property or that the conveyance was burdened with any condition not' expressed in the deed. If the ·principle contended for by appellants were generally recognized scarcely any title would be safe from attack.

The evidence further shows that the respondent at the time of the purchase had no actual knowledge of any equitable claim of appellants. The contention that the possession of the property by certain of the patentees was constructive notice of their equity cannot prevail here over the finding of the trial court, as there is evidence to the effect that only one of them was on the premises, and he stated that he had no claim to the mine but was there under a license.

Appellants do not contend for adverse possession, but simply rely upon the alleged defects in respondent's title. The foregoing is, therefore, decisive of the controversy and renders immaterial—even if assailable—the finding in favor of respondent's prescriptive right.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 17, 1909.