## Ernst, Jr. v. Kwik-Chek Realty Company, Inc.

*Andrew B. Cantor*, for plaintiffs.

*George C. Corson, Jr.*, for defendants.

STANZIANI, J., December 6, 1972.—This is an appeal from an order dated September 29, 1972, in which the court en banc granted plaintiffs' motion for summary judgment.

Prior to October 21, 1964, Mr. and Mrs. Harold Murphy owned the premises presently owned by plaintiffs and the premises presently owned by defendent, Kwik-Chek Realty Company, Inc. (herein-

after referred to as parcels 2 and 1, respectively). On that date, the Murphys conveyed parcels 2 and 1 to Hexa of Pennsylvania, Inc., taking a purchase money mortgage in the amount of $28,000 on parcel 2 only. Later on that same day, Hexa of Pennsylvania, Inc., conveyed parcel 1 to defendant Kwik-Chek Realty Company, Inc., and in the deed granted an easement for ingress and egress over parcel 2. Subsequently, Hexa of Pennsylvania, Inc., defaulted on the payment of the purchase money mortgage held on parcel 2 and the Murphys foreclosed the mortgage and bought parcel 2 at the sheriff's sale. On February 20, 1969, the Murphys received a deed from the Sheriff of Montgomery County to parcel 2 and on that same day they conveyed parcel 2 to plaintiff for $28,000. On July 2, 1970, plaintiffs filed a complaint to quiet title as to parcel 2 seeking to terminate "all rights which defendant Kwik-Chek and its lessee may have under the deed of Hexa of Pennsylvania, Inc. to Kwik-Chek Realty Company, Inc. dated October 21, 1964 . . ." Defendants filed an answer and new matter on September 25, 1970, in which they aver, as new matter, that the Murphys "knew or had reason to know that the easement in the premises outlined in blue on Exhibit '1' hereto was being or had been granted to defendant Kwik-Chek Realty Company, Inc. and would be used by defendants in the operation of their convenience store and that a portion of the purchase price to be paid by Hexa of Pennsylvania, Inc. to the Murphys was being given by defendant Kwik-Chek Realty Company, Inc. in exchange for such easement."

Paragraph 15 of the new matter alleges that prior to plaintiffs' acquisition of an interest in the premises "defendants had placed improvements on and were openly using in the operation of their convenience store the premises outlined in blue on Exhibit '1' here-

to." In their reply to new matter filed October 8, 1970, plaintiffs admit that defendants made certain improvements within the boundaries of the easement but deny that these improvements were made "in accordance with any alleged right under the alleged easement" and further aver that the right to use such easement "was subordinate to the rights of the Murphys, as mortgagees." On March 20, 1972, plaintiffs filed a motion for summary judgment alleging that "there is no general issue as to any material fact" since:

"The pleadings and records establish that the easement granted to defendant, Kwik-Chek Realty Company, Inc., as set forth in Exhibit 'C', attached hereto, was over the lands presently owned by the plaintiffs, and was subordinate by law to purchase money mortgage of Harold S. Murphy and Gertrude I. Murphy (Exhibit 'B' attached hereto), and that said easement over the premises of plaintiffs as described in Exhibit 'C' was discharged and extinguished by the foreclosure of the mortgage proceedings and Sheriff's subsequent Deed to the aforesaid Murphys, who were the plaintiffs' grantors."

On April 6, 1972, defendants filed their response to motion for summary judgment in which they alleged that "the pleadings and the records attached to plaintiffs' motion for summary judgment raise genuine issues as to several material facts which, if resolved in favor of defendants, will result in a decree confirming the validity of defendant's easement over the land presently owned by plaintiffs." Defendants fail to specify the nature of these "genuine issues." On May 26, 1972, plaintiffs filed a praecipe directing the prothonotary to list the case for argument. The case was duly scheduled for argument before the court en banc on Monday, September 25, 1972. Briefs were

filed and the case was argued on September 25, 1972. On September 29, 1972, the court entered an order granting plaintiffs' motion for summary judgment from which this appeal was taken.

It is well-settled law in Pennsylvania that "the title of a purchaser at a sheriff's sale [upon foreclosure of a mortgage] relates back to the date of the mortgage and defeats all intervening estates and interests, [including easements] acquired subsequent to the mortgage": Dexter et al. v. Pennsylvania Power Company, Appellant, 127 Pa. Superior Ct. 419, 421 (1937). The Superior Court of Pennsylvania goes on to say, on page 421, that:

"It naturally follows that a sheriff's sale on a prior mortgage destroys a subsequently granted easement. It was so held in King v. McCully, 38 Pa. 76, 77, where it is stated that title to the right of way 'was subject to the mortgage, and as the sheriff's sale vested title in the purchaser by relation to the date of the mortgage it swept away all title under those deeds as well to the right of way as to the land.' This seems to be the only Pennsylvania authority on that question, but it is supported by decisions in other jurisdictions: See Mt. Holyoke Realty Corp. v. Holyoke Realty Corp. et al. (Mass.), 187 N. E. 227; Naccash v. Hildansid Realty Corp., 257 N. Y. S. 748; Arterburn v. Beard et al. (Neb.), 126 N. W. 379; Stanislaus Water Co. v. Bachman (Cal.), 93 P. 858; Briggs v. Chicago, K. & W. R. Co. (Kans.), 43 P. 1131; Leavenworth Lodge v. Byers (Kans.), 38 P. 261; 7 Mich. L. R. 595."

More recently, in Vanderwerff et ux. v. Consumers Gas Company et al., 166 Pa. Superior Ct. 358 (1950), the court, citing the Dexter case, states:

"The security of a mortgage cannot be impaired by an easement subsequently imposed on the land without the consent of the mortgagee." Page 363.

Defendants admit that this is the general rule but claim that this case fits into the exception to the rule which subordinates the mortgage to the easement when the mortgagee consents. Defendant cites Frankford Trust Company v. Manufacturers Life Insurance Company of Toronto, Canada, 47 D. & C. 2d 547 (1968), as authority for that exception. Although it is true that in the Frankford Trust case the Montgomery County court found that the after-acquired easement survived the sheriff's sale on the foreclosure of a prior mortgage, there are several facts that distinguish that case from the case at bar. First of all, in the Frankford Trust case, Judge Smillie was confronted with the problem of an easement by implication in favor of tenants of an apartment complex. In planning for this large-scale project, the developers intended that all of the buildings would comprise one single complex, and the facilities built to benefit the tenants in one building would benefit the tenants in all of the other buildings. The swimming pool was such a facility. Judge Smillie recognized the problems the developers of such a complex face, when, on page 560, he states:

"Financing of large-scale projects such as the Robert Bruce West Apartments cannot often be obtained from only one lender. Where several lending institutions each take mortgages on different buildings of one apartment complex, they look to the property covered by the mortgage only as security for their loan. If the unexpected happens, the mortgagees foreclose and the different buildings come under several different owners; to prevent the tenants of one building from using facilities placed in another building, but obviously intended by the developer to be used by tenants of all the apartments, would work an injustice on tenants

of the precluded apartments, part of whose inducement for renting is the promised use of the facility."

Secondly, on page 551 of the Frankford Trust case, Judge Smillie finds as a fact that "Frankford's mortgage covering buildings M & N was recorded July 11, 1963; Manufacturers' mortgage covering the entire Robert Bruce West complex was recorded July 12, 1963. In addition, a subordination agreement was executed by the parties, by which the mortgage of Manufacturers was subordinated to that of Frankford." So that in Frankford Trust the court was concerned with preseving the intended unity of a single apartment complex threatened with fragmentation through foreclosure proceedings and the express subordination of defendant's mortgage to the mortage of the plaintiff when it permanently enjoined the defendant mortgagee from interfering with the use of the easement by the tenants.

Here, there is no express subordination agreement nor any express consent by the mortgagee of the easement. There is merely an allegation by defendant of implied consent based on the alleged knowledge of plaintiff of the planned use of the land by defendant. "It is defendants' position that the Murphys, in view of their knowledge, if not expressly, impliedly consented to subordinate their mortgage on Parcel 2 to the easement over a part of that parcel." Defendants would have us believe that mere knowledge equals consent. This court finds such a proposition illogical and unreasonable. The facts reveal that the Murphys never consented, expressly or impliedly, to subordinate their mortgage to the easement. A bald allegation by defendant that there was implied consent by the mortgagee to subordinate his mortgage to the easement does not raise a genuine issue of fact as defend-

ant contends. Defendant does not allege any actual consent, written or oral. Rather, he alleges that consent can be implied merely because the mortgagee had knowledge of the planned use of the land. With this contention, we cannot agree.

Defendant also cites Gordon, Secretary of Banking v. Pennsylvania Power Company, 20 D. & C. 674 (1934), for the proposition that an open and visible easement survives the sheriff's sale. In that case, plaintiff, the purchaser at a sheriff's sale, sought to charge defendant power company, the easement owner, $10 per day for its use of the property after its receipt of a letter sent by plaintiff that if defendant continued to use the property for its power lines, he would be charged. Plaintiff argued that defendant's continued use amounted to implied consent to pay the price. The county court rejected this contention and found for defendant, showing extraordinary concern for power companies with the right of eminent domain. However, this exception to the rule that Gordon tried to establish was effectively wiped out when the Superior Court reaffirmed the general rule three years later in the Dexter case, supra, which also involved a power company having the right of eminent domain. However, the instant case does not involve a power company or any party with the right of eminent domain. Thus, the Gordon case is really inapposite to the instant set of facts.

This case poses a question of law only, and that is: "Does the foreclosure of a prior mortgage and consequent sheriff's sale extinguish an after-acquired easement?" The answer, clearly, is an affirmative one. Defendants' response to motion for summary judgment fails to state with specificity the nature of the "genuine issues" of material fact that the pleadings and records allegedly leave unresolved. Thus, the

only question before this court was the above-quoted question of law. Rule 1035 of the Pennsylvania Rules of Civil Procedure provides for the entry of summary judgment:

"The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Having resolved the question of law in the affirmative, plaintiffs were entitled to judgment since there was nothing for a jury to decide. Consequently, the granting of plaintiffs' motion for summary judgment by the court en banc was the proper disposition of this action.