[L. A. No. 2158. Department Two.—January 8, 1909.]

E. P. BRYAN, Appellant, v. JOHN GROSSE et al., Respondents.

COVENANTS FOR RECIPROCAL EASEMENTS — ENFORCEMENT IN EQUITY — SUBSEQUENT PURCHASER WITH NOTICE.—An agreement between adjoining landowners, covenanting for reciprocal easements with reference to their adjoining lands for the benefit thereof, will be enforced in equity against a subsequent purchaser of one of the

tracts who had notice thereof, notwithstanding the covenants did not in law technically run with the land.

ID.—EASEMENTS MAY BE CREATED BY COVENANT. — Easements for light and air may be created by words of covenant as well as by words of grant.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Valentine & Newby, for Appellant.

O'Melveney, Stevens & Milliken, for Respondent Grosse.

Williams, Goudge & Chandler, for Respondent Development Building Company.

MELVIN, J.—In 1894 Mrs. M. J. Turner and Abbott Kinney entered into an agreement whereby certain reciprocal easements were sought to be created with reference to their adjoining parcels of land in the city of Los Angeles.  Appellant Bryan and respondent Grosse became possessed, through mesne conveyances, of the respective interests of Mrs. Turner and Kinney, Grosse's title being subject, however, to a thirty-year leasehold interest of the other respondent, the Development Building Company.

A complaint was filed by Bryan in which he asked to have his title quieted to the property formerly owned by Mrs. Turner; and prayed that the second paragraph of the agreement between Mrs. Turner and Kinney be declared null and void.  A demurrer to this complaint was sustained and plaintiff failing to amend, judgment was entered for defendants. From that judgment this appeal is taken.

In the agreement mentioned in and annexed to the complaint as an exhibit Mrs. Turner is designated as the party of the first part and Abbott Kinney as the party of the second part.  They adopt the north line of the building owned by the first party on the east side of Spring Street, about eighty feet south of the south line of Sixth Street, as the line between the eighty feet owned by the second party at the southeast corner of Spring and Sixth streets and the forty-

foot lot of the first party immediately south of the second party's property, such line running a distance of eighty feet to the rear of the building and thence straight to the true northeast corner of the first party's lot.

The second paragraph of the agreement is as follows: "Said first party agrees that the second party may erect a building on said premises with openings for light and air in the south wall thereof above the second floor from the rear of the building of said first party as it now exists, and also over the roof of the present building of said first party; and if hereafter said first party shall extend her building farther back than her present building, or erect a new building extending farther back than her present building, she agrees to leave a space of fifteen feet in width next to the premises of the said second party for a light- and air-well from the second floor being the floor next above the grade floor upward from the rear of the present building of said first party to the east end of her said lot, but if said party shall hereafter raise her present building higher or erect a new building extending upwards higher than her present building she shall have the right to close up the windows in the south wall of said second party's building where the same are over the roof of the present building of said first party."

The third paragraph provides that in consideration of the first party's agreements, the second party promises to give ingress and egress from and to Sixth Street over a ten-foot strip at the eastern end of his property and that when a public alley shall have been opened, "the parties to this agreement shall not claim damages, one against the other, or compensation as against each other for any portion of their said lots which may be taken for said alley."

The concluding paragraph is as follows: "The covenants herein contained are to run with the land and be binding upon the parties and all persons claiming thereunder."

It is alleged in the complaint on information and belief that the second paragraph was inserted because of the mistaken belief of Mrs. Turner, based on Kinney's representations that her building encroached upon his land. It is also alleged that the consideration mentioned in the contract has failed, because at the opening of the public alley, Mrs. Turner paid $247 as damages for the benefit of Kinney.

In sustaining the demurrer, the learned judge of the superior court filed a. written opinion, quoted by appellant in his opening brief, in which it is held that the mutual agreement of the adjacent owners creates reciprocal easements in each other's lands, enforceable in equity, no matter whether there is privity of estate or express grant; and that it is the duty of the plaintiff in his pleading to overcome such equities. There were numerous special grounds of demurrer, but they were not considered in the court below, and by reason of the conclusions we have reached they need not be reviewed here.

Appellant cites sections 1460, 1461, 1462, and 1465 of the Civil Code. The first of these defines covenants running with the land as those contained in *grants* of estates in real property. Section 1462 is as follows: "Every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land." Section 1465 provides that a covenant running with the land binds those only who acquire the whole estate of the covenantor in some part of the real property. From these sections and numerous citations he adduces the rule that only those covenants run with the land which are contained in grants, where there is privity of tenure or estate between grantor and grantee, and that these covenants must be made for the direct benefit of the grantor's property. Whether or not the agreement here under discussion fulfills these requisites, it is unnecessary to determine. Evidently, from the last paragraph of the contract it was the intention of the parties thereto that such should be its force. This covenant for an easement is one which equity will enforce. It is one made for the benefit of respondent Grosse's property, and appellant having acquired the land formerly owned by Mrs. Turner, and being charged with notice of the equities, his conscience is bound by the covenant, whether in law it runs with the land or not. As was said by this court in *Hunt* v. *Jones*, 149 Cal. 297, [86 Pac. 686], quoting *Whitney* v. *Union Railway Co.*, 11 Gray, (Mass.) 359, [71 Am. Dec. 715]: "The precise form of the nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding upon him merely because he

stands as an assignee of the party who makes the agreement, but because he has taken the estate with notice of a valid agreement concerning it which he cannot equitably refuse to perform." The same principle is announced in *First National Bank of Portsmouth* v. *Portsmouth Savings Bank,* 71 N. H. 549, [53 Atl. 1018], where Mr. Justice Bingham delivering the opinion of the court uses this language: "The mutual covenants contained in the agreement of February 8, 1870, in which it was provided 'that no change in the front of said building or in the principal entrance thereto shall be made by either party without the consent of the other,' are to be construed as grants of negative easements for the benefit of the respective properties; and as the parties to this action and the agreement are the same, it is unnecessary to determine whether the covenants run with the land, and would be obligatory upon the successors and assigns of the contracting parties, though not named."

Appellant lays great stress upon an expression contained in a part of the syllabus in the case of *Kennedy* v. *Burnap,* 120 Cal. 488, [52 Pac. 843], where the following language was employed: "An easement for light and air can only be acquired in this state by express grant, and cannot be acquired by user, nor by implied grant from the mere conveyance of a house with windows overlooking another lot of the grantor; and an injunction will not lie to prevent a vendee of such other lot from erecting a building on his lot so as to close up and darken such windows, and shut off the light and air therefrom." The words *"express grant"* do not mean, we take it, that such easement may only be acquired by a grant contained in a deed of conveyance. The court was discussing the former English rule that easements for light and air may pass by implication. It was held that in California no such rule obtained. In that very case the learned commissioner quotes with approval, the following language from *Keats* v. *Hugo,* 115 Mass. 204, [15 Am. Rep. 80]: "The simplest rule and that best suited to a country like ours, in which changes are taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, *or covenant relating to,* the lands over which the right is claimed," and there is eminent authority supporting the doctrine that easements for light and air may

be created by words of *covenant* as well as by words of *grant*. (See the opinion of the court delivered by Mr. Justice Holmes in *Ladd* v. *City of Boston*, 151 Mass. 585, [21 Am. St. Rep. 484, 24 N. E. 858].)

There is nothing in the case of *Los Angeles etc. Co.* v. *Muir*, 136 Cal. 37, [68 Pac. 308], which conflicts with the views here expressed. In that case it was decided that the contract in question was purely a personal one creating no easement nor *jus in rem* and that therefore no enforceable equity arose in favor of the plaintiff.

There are no allegations in the complaint here considered which negative the equities established by the contract, a copy of which is thereto attached. The statement, upon information or belief, that Mrs. Turner would not have assented to the second paragraph of the contract but for Kinney's representation that the north wall of her building encroached upon his land is not sufficient, particularly as the averment that it was wholly on her own land is only upon information or belief. Neither a cause of action for fraud nor for mistake is properly set forth. And it does not appear that in accepting the $1290 awarded to him upon the establishment of the public alley, Mr. Kinney knew that a part of the assessment had been paid by Mrs. Turner.

It follows that the demurrer was properly sustained and the judgment of the lower court is affirmed.

Henshaw, J., and Lorigan, J., concurred.