[L. A. No. 16755.   In Bank.—April 15, 1940.]

ANTHONY D. MARRA et al., Respondents, v. AETNA CONSTRUCTION COMPANY (a Corporation), Appellant.

Harold Larson for Appellant.

William L. Kuehn and Franz R. Sachse for Respondents.

WASTE, C. J.—This is an appeal from a judgment quieting the plaintiffs' title to real property and declaring the property free of certain building restrictions. The defendant and appellant Aetna Construction Company, is the owner of adjoining property. The question decisive of the case is whether certain covenants in the plaintiffs' chain of title are binding upon them, either as covenants running with the land or as equitable servitudes.

The parties are substantially agreed upon the facts. In 1922 F. E. Woodley and his wife owned two adjoining lots (designated herein as lots 6 and 7) on Havenhurst Drive in the city of Los Angeles. In that year they conveyed lot 6 to W. P. Stroh and his wife by a grant deed which recited that "the grantees, their successors and assigns" covenanted that for forty years thereafter no structure other than a one-family residence costing at least $8,000 would be built upon the land. The deed also declared that this provision should be deemed a "covenant running with the land" and should at all times be binding upon and enforceable against the grantees, their successors and assigns, or against any and all persons who should at any time thereafter become the owner of the land conveyed by the deed. This covenant was not made in contemplation of any general or uniform plan of improvement for establishing a district of one-family residences, but the deed did recite that the covenant was made for the benefit of lot 7.

In 1937 the Strohs conveyed lot 6 to the respondents by ordinary deed. The appellant maintains that the respondents took title to the property with actual knowledge of the restrictions contained in the 1922 deed, but the respondents point out that the record contains no evidence that they had such knowledge. The appellant is the owner of lot 7, having

acquired the title of the Woodleys by mesne conveyances with knowledge of the restrictions contained in their grant of lot 6.

Findings of the trial court state that conditions in the neighborhood where lots 6 and 7 are situated have changed substantially since 1922, and recite with particularity facts showing the nature and scope of the change. It was also found that if its use were unrestricted, lot 6 would be reasonably worth $12,000, while the value, subject to the restrictions, is only $2,000. The court concluded that the covenant did not run with the land, that it would be inequitable to enforce the restrictions against the respondents as a servitude and consequently that the covenant was not binding upon them.

At the outset, the appellant challenges the propriety of giving affirmative equitable relief against restrictive covenants, even assuming a substantial change of conditions in the neighborhood. (*Strong* v. *Shatto*, 45 Cal. App. 29, 37 [187 Pac. 159].) However, since the decision of this court in *Hess* v. *Country Club Park*, 213 Cal. 613 [2 Pac. (2d) 782], it has been settled that an owner may test the enforceability of covenants or servitudes asserted against his property in a suit for declaratory relief and to quiet title. He is not required to violate the restrictions at the risk of suffering the penalties which might result from such a breach in order to ascertain his legal rights. (See 50 Harv. L. Rev. 171, 217; 88 A. L. R. 405; [*Osius* v. *Barton*, 109 Fla. 556, 147 So. 862, 88 A. L. R. 394].)

To support its contention that the covenant contained in the 1922 deed runs with the land, the appellant relies upon section 1468 of the Civil Code. That provision reads: "A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, and which is made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with both of such parcels of land." But it is apparent that this section of the code applies only to covenants entered into between owners of property. Covenants, like the present one, contained in a grant in fee of real property, are governed solely by section 1462 of the Civil Code, which provides: "Every covenant contained in a grant of an estate in real property, which is made

for the direct benefit of the property, or some part of it then in existence, runs with the land." The decisions have interpreted this provision to mean that a burdensome covenant contained in a deed which in no way benefits the property conveyed is not binding at law upon the transferees of the grantee. (*Los Angeles Terminal Land Co.* v. *Muir*, 136 Cal. 36 [68 Pac. 308]; *Breese* v. *Dunn*, 178 Cal. 96 [172 Pac. 387]; *Werner* v. *Graham*, 181 Cal. 174 [183 Pac. 945]; 4 So. Cal. L. Rev. 343, 355.) Since the restrictions involved here are of no conceivable benefit to lot 6, it is clear that they are not binding upon the respondents under the provisions of the code.

■ Even though a covenant does not run with the land, it may be enforceable in equity against a transferee of the covenantor who takes with knowledge of its terms under circumstances which would make it inequitable to permit him to avoid the restriction. (*Bryan* v. *Grosse*, 155 Cal. 132 [99 Pac. 499]; *Martin* v. *Holm*, 197 Cal. 733 [242 Pac. 718]; *Coulter* v. *Sausalito Bay Water Co.*, 122 Cal. App. 480, 495 [10 Pac. (2d) 780]; 10 So. Cal. L. Rev. 281; 11 Cal. L. Rev. 48.) The doctrine of equitable servitudes has been invoked chiefly in cases where uniform building restrictions have been imposed pursuant to a general plan for improving an entire tract or real estate subdivision, but it is by no means true, as the respondents contend, that the doctrine is restricted to such cases. *Tulk* v. *Moxhay*, 41 Eng. Rep. 1143, in which the doctrine was first applied, was itself a case involving restrictions imposed upon a single lot. *Bryan* v. *Grosse, supra*, and *Relovich* v. *Stuart*, 211 Cal. 422 [295 Pac. 819], furnish examples of decisions in this state which have enforced covenants in equity although they benefit or restrict only a single parcel of land. It is true, however, that a servitude cannot exist in gross, but must be appurtenant to other benefited property. (*Berryman* v. *Hotel Savoy Co.*, 160 Cal. 559 [117 Pac. 677, 37 L. R. A. (N. S.) 5].) ■ Also well recognized is the rule that a building restriction in the nature of a servitude will not be enforced where changed conditions in the neighborhood have rendered the purpose of the restrictions obsolete. (*Downs* v. *Kroeger*, 200 Cal. 743 [254 Pac. 1101]; *Hess* v. *Country Club Park, supra*; *Hurd* v. *Albert*, 214 Cal. 15 [3. Pac. (2d) 545, 76 A. L. R. 1348]; 1 So. Cal. L. Rev. 486, 489.) But, if the original purpose of the cove-

nant can still be realized, it will be enforced even though the unrestricted use of the property would be more profitable to its owner. (*Strong* v. *Hancock,* 201 Cal. 530 [258 Pac. 60]; 16 Cal. L. Rev. 58.)

██ In the present case the respondents assert that they cannot be bound by the restrictions because there is no proof that they acquired their property with notice of the covenant. However, since they were seeking affirmative relief, it was incumbent upon them to show that they lacked such knowledge rather than upon the appellant to prove the contrary. Moreover, the respondents' pleadings were framed and their entire case was tried upon a theory which assumed their original knowledge of the covenant but sought to avoid its effect by proof of changed circumstances. This court is not inclined to decide an appeal upon a state of facts which, as the record plainly demonstrates, is contrary to an assumption entertained by the court as well as by the parties throughout the trial of the case.

We think, however, that the trial court was warranted in concluding that conditions have undergone a sufficient change since the covenant was made to render the limitation upon the use of the respondents' land obsolete and unreasonable in its purpose. The evidence shows that the house on lot 7 is no longer used as a residence but has been converted into a nursery school and kindergarten. Hence, if the sole purpose of the restriction on the servient property was to protect the value of the dominant estate for residential use, that purpose is at present not being realized.

The evidence also shows that the nature of the neighboring property has substantially changed. The two lots are located on the west side of Havenhurst Drive between Sunset Boulevard and Fountain Avenue in the city of Los Angeles. While the west side of the street in that block is still predominantly residential, it contains two bungalow courts, one of which immediately adjoins lot 6. Directly across the street from lot 6 is a seven-story apartment house, and adjoining it on the north is a gown shop and beyond that a large one-story apartment court. South of the seven-story apartment is a three-story apartment house, and beyond that are one- and two-story residences. Sunset Boulevard at this location is devoted almost entirely to commercial uses. This evidence supports the trial court's conclusion that the prop-

erty in question is no longer sufficiently desirable for residential use to warrant the enforcement of the restrictions against the respondents.

The judgment is affirmed.

Shenk, J., Curtis, J., Carter, J., Gibson, J., Edmonds, J., and Houser, J., concurred.