[Civ. No. 18460. Third Dist. Oct. 29, 1980.]

HUDSON OIL COMPANY, INC., Plaintiff and Appellant, v. SHORTSTOP, Defendant and Respondent.

490

Counsel

Rodegerdts, Means, Estey & Reed and Robert Nakken for Plaintiff and Appellant.

Aiken, Kramer & Cummings and Fred V. Cummings for Defendant and Respondent.

Opinion

**CARR, J.**—Plaintiff Hudson Oil Company appeals from a judgment by the court denying it a permanent injunction to restrain defendant Shortstop from dispensing gasoline, allegedly in violation of a lease agreement entered into between lessors the Bells (not parties herein who are Shortstop's predecessors in interest) and lessee A.A.A. Stations, Inc. (Hudson's predecessor in interest). On appeal, Hudson asserts (1) a restrictive covenant contained in the lease "ran with the land" pursuant to the requirement of Civil Code section 1470 and thus was enforceable against Shortstop as a subsequent purchaser of the Bell property to the north of the leased premises and, alternatively, (2) the covenant was enforceable as an equitable servitude upon the land Shortstop had purchased from the Bells. The case was submitted to the trial court on an agreed statement of facts. The facts are as follows:

On November 11, 1961, the Bells leased to A.A.A. Stations, Inc., a service station site occupying the southerly portion of a two-acre tract owned by the Bells. Paragraph 12 of the lease agreement read:

"12. RESTRICTIONS

"Lessors own additional property north of this property and agrees [*sic*] not to permit the erection or operation of a service station on said property.

"This lease shall be binding upon and inure to the benefit of the successors and assigns of Lessee, and the heirs, administrators, executors, devisees, trustees, successors and assigns of Lessor."

At the time of entering into the lease, the Bells also owned another parcel of commercial land northeast of but not contiguous to the two-acre tract.

Through name changes and merger, Hudson became successor in interest to A.A.A. Stations, Inc.'s rights under the lease. Hudson has exercised its options under the lease to extend the lease through November 10, 1981, and has the option to extend it further until November 10, 1986. The Bell-Hudson lease has never been acknowledged or recorded.

On January 4, 1973, the Bells leased the northernmost portion of their two-acre tract to National Convenience Stores, Inc. The following day, the Bells and National Convenience Stores executed an addendum to this lease which prohibited the sale of gasoline and petroleum products on the leased premises for so long as the Bell-Hudson lease continued in effect and so long as the Bell-Hudson lease prohibited the operation of a service station on the property which was the subject of the lease between Bell and National Convenience Stores.

In 1975, National Convenience Stores assigned its rights under its lease to Shortstop. On December 3, 1976,[1] Shortstop purchased the store site it had previously leased from the Bells. At the time of the purchase, Shortstop had actual knowledge of the Bell-Hudson lease and the restrictive covenant provisions in that lease. A preliminary title report

---

[1]The "Statement of Agreed Facts" states the date to be December 3, 1976. On appeal the parties stipulate this is a typographical error and the correct date is December 3, 1977.

also disclosed as an exception to title the effects of any "covenants, conditions and restrictions" contained in the Bell-Hudson lease. However, the grant deed from the Bells to Shortstop contained no prohibition of a service station or sale of gasoline on the deeded property.

Between December 3, 1976, and February 8, 1977, Shortstop installed a gasoline-dispensing system on the purchased property. Beginning on February 8, 1977, and continuously thereafter, Shortstop has sold gasoline on this property on a 24-hour basis. Hudson has demanded that Shortstop cease selling gasoline but Shortstop has refused.

The respective locations of the properties involved may be diagramed as follows:

Bells' original two-acre parcel: ‖‖

Bell-Hudson leased property: ////

Shortstop's property: \\\\

We agree the restrictive covenant in the Bell-Hudson lease was unenforceable against Shortstop under Civil Code, section 1470. As pertinent herein, that section provides: "Each covenant made by the lessor in a lease of real property not to use or permit to be used contrary to the terms of such lease any other real property which is owned by the lessor and is contiguous (except for intervening public streets, alleys, or sidewalks) to the real property demised to the lessee shall, except as provided by Section 1466, be binding upon each successive owner, during his ownership, of any portion of such contiguous real property affected thereby and upon each person having any interest therein derived through any owner thereof where all of the following requirements are met:

"(a) Such contiguous real property is particularly described in the lease;

"(b) Such successive owners and persons having any such interest are in the lease expressed to be bound thereby for the benefit of the demised real property;

"(c) The lease is recorded in the same manner as grants of real property, in the office of the recorder of each county in which such contiguous real property or some part thereof is situate. Such lease shall include therein the description of any such contiguous land described in any unrecorded instrument, the contents of which unrecorded instrument are incorporated by reference in such recorded lease."

The lease herein was not recorded in compliance with subdivision (c), no constructive notice of the provisions thereof was given and the covenant did not bind the successive owner Shortstop under the statutory provision. Any other remedy at law against Shortstop was likewise precluded as only those covenants specified in title 3, of which section 1470 is a part, "run with the land," i.e., bind the "assigns of the covenantor" and vest in the "assigns of the covenantee." (Civ. Code, §§ 1460, 1461.)

■ We do not agree, however, that Hudson is precluded from equitable relief. ■ Section 1470 simply prescribes the acts necessary to effect a covenant running with the land in leaseholds. Such covenants, if they are to run with the land must conform to certain legal requirements. However, in the absence of the essential requirements of a covenant, equity will in an appropriate case, enforce the restriction, though it is of a personal nature against the covenantor's transferee who

took the burdened land with notice and knowledge of the terms of the use restrictions. (*Hunt* v. *Jones* (1906) 149 Cal. 297 [86 P. 686]; *Relovich* v. *Stuart* (1931) 211 Cal. 422, 428 [295 P. 819]; *Richardson* v. *Callahan* (1931) 213 Cal. 683, 686-687 [3 P.2d 927]; *Marra* v. *Aetna Construction Co.* (1940) 15 Cal.2d 375, 378 [101 P.2d 490]; *MacDonald Properties, Inc.* v. *Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 699-701 [140 Cal.Rptr. 367]; see also *Russell* v. *Palo Verdes Properties* (1963) 218 Cal.App.2d 754 [32 Cal.Rptr. 488].)

The trial court based its refusal to impose an equitable servitude in favor of Hudson in the following language of *Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500 [131 Cal.Rptr. 381, 551 P.2d 1213].) "Equitable servitudes in land may be created in this state only by *deed*, and the expectations of the parties, reasonable or otherwise, are wholly without relevance in the absence of language in the deed having the legal effect of creating such a servitude." (P. 512; italics added.)

The trial court construed *Riley supra*, and particularly the quoted passage, too narrowly and out of context. We note first that the holding relied upon by the trial court is dicta, addressed to the issue of estoppel, which, as noted by the court in its opinion, was expressly disavowed as a theory of reliance by defendants-appellants in the trial court. The court, however, deemed it necessary "for the guidance of the courts in the future" to observe that the doctrine has no application in the area of equitable servitudes. This is followed by the statement that equitable servitudes may be created only by deeds.

In *Riley, supra*, as in its landmark predecessor, *Werner* v. *Graham* (1919) 181 Cal. 174 [183 P. 945], the Supreme Court was concerned with the somewhat esoteric field of subdivision law and whether properties within a subdivision could be burdened by "mutual equitable servitudes" for the benefit of the entire subdivision. Relying on *Werner, Riley* held building restrictions for the benefit of an entire subdivision do not spring into existence unless the original grant deed from the subdivider-grantor definitely and clearly expressed an intent to create restrictions common to the conveyed and retained properties. (*Riley, supra*, 17 Cal.3d at pp. 505-507, 510.) Only then are subsequent grantees who take from the common grantor-subdivider with actual or constructive notice of the restrictions bound in equity by the restrictions notwithstanding the fact that similar clauses have been omitted from their deeds. (*Id.*, at p. 507.) Significantly, in *Riley* the declaration con-

taining the use restrictions was not recorded until nine months after plaintiff-respondent's deed, containing no restrictions, was recorded. The *Riley* trial court permitted, over objection, evidence of plaintiff's knowledge of these restrictions and their apparent acquiescence therein for a period of time. The pivotal issue, as framed by the court, was whether, in the absence of privity of contract between the parties, the restrictions sought to be enforced by defendants were mutually enforceable equitable servitudes for the benefit of the entire subdivision. The court concluded under the factual situation present that plaintiff's deed was clear and unambiguous, precluding evidence of a contrary intent pursuant to the parole evidence rule and no mutual servitudes were created. The Supreme Court's remarks that equitable servitudes in land may be created only by deed, were germane to a factual situation in which grant deeds were the written instruments used to create the respective rights of the parties.

■  The general rule as stated in *Werner, supra*, is that parties who desire to create building restrictions in real property must say so ". . . in the only place where it can be given legal effect, namely, in the *written instruments* exchanged between them which constitute the final expression of their understanding." (*Werner v. Graham, supra*, 181 Cal. at p. 185; see also *Martin v. Holm* (1925) 197 Cal. 733, 742-743 [242 P. 718]; *Murry v. Lovell* (1955) 132 Cal.App.2d 30, 33-34 [281 P.2d 316]; italics added.) In light of the limited focus in *Riley* on a grant deed as opposed to another type of written instrument, we do not believe the court intended by conclusionary dicta to preclude the creation of equitable servitudes in written instruments other than deeds. Rather, we deem the court meant to clarify that a restrictive convenant must be contained in the written instrument embodying the understanding between the original parties (i.e., original grant deed) in order to be binding on successors in interest of the covenantor (i.e., subsequent grantees from the common grantor). Such conclusion is consistent with established law that contracting parties are free to agree to restrictions on the use of real property by memorializing their intent in other types of written instruments and that equitable principles apply to all such contracts (*Stone v. Jones* (1944) 66 Cal.App.2d 264, 268 [152 P.2d 19]; *Bryan v. Grosse* (1909) 155 Cal. 132, 135, 137 [99 P. 499]), and that equity will enforce covenants contained in lease agreements against those who take with notice. (*Standard Oil Co. v. Slye* (1913) 164 Cal. 435, 442 [129 P. 589]; *Richardson v. Callahan, supra*, 213 Cal. at p. 690.)

Section 1217 of the Civil Code provides: "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof." ██ In the case at bar, Shortstop, as successor in interest of the Bells, had actual notice of the restriction contained in the Bell-Hudson lease and such provision was likewise incorporated into its own lease with the Bells on the same property in which Shortstop now has the ownership interest.

In the Bell-Hudson lease, the parties expressed an intent to bind the successors as assigns of the Bells. Shortstop argues that omission of the specific term "successive owners" in the lease clause discloses an intent *not* to bind Shortstop. We do not agree. The use of the general language evinces an intent to burden with the restriction all successors in interest of the Bells, including successive owners. To the extent that the trial court's factual findings are to the contrary, they are rejected. An appellate court may independently review the meaning of a contract. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].)

More problematic is whether the lease adequately identified the contiguous servient property to be burdened by the restriction. Subdivision (c) of Civil Code section 1470, requires the burdened "contiguous real property" to be "particulary described in the lease." But we are here concerned with equitable relief wherein legal requirements have not been satisfied. (See *Richardson* v. *Callahan, supra,* 213 Cal. at p. 686; *MacDonald Properties, Inc.* v. *Bel-Air Country Club, supra,* 72 Cal. App.3d at pp. 699-700.) If the written lease sufficiently delineates the extent of the property affected so the intention of the parties is not left to mere conjecture, equity may enforce the restrictive covenant. (See *Riley, supra,* 17 Cal.3d at p. 510.)

Here, the affected property was described as property owned by the lessor to the north of the leased property. Independently construing the intended meaning of the description (*Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d at p. 866), we think it clear the parties intended to burden with the service station restriction the Bells' property directly to the north, not their contiguous property to the northeast. We are not limited by the four corners of the lease and may consider extrinsic evidence embodied in the lease between the Bells and Shortstop's predecessor in interest. (*Riley, supra,* 17 Cal.3d at p. 512, fn. 7.) The fact that this subsequent lease imposed a restriction on the sale of gasoline

on the premises so leased manifests an intent that the subject property was burdened under the Bell-Hudson lease.

We find no basis for not enforcing the restrictive covenant contained in the Bell-Hudson lease as an equitable servitude against Shortstop. We, however, express no views regarding other issues raised but not decided by the trial court, including whether Shortstop is operating a service station and whether there has been a change in circumstances. These factual questions are more appropriate for the trial court to consider on remand.

The judgment is reversed and remanded for proceedings consistent with the views expressed herein.

Puglia, P. J., and Blease, J., concurred.

A petition for a rehearing was denied November 24, 1980, and respondent's petition for a hearing by the Supreme Court was denied December 24, 1980.