Filed 11/26/13  Hafen v. Nielsen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS HAFEN, as cotrustee, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>RHONDA NIELSEN,<br><br>    Defendant and Respondent. | G047689<br><br>(Super. Ct. No. 05CC07279)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Mazur & Mazur, Janice R. Mazur and William E. Mazur, for Plaintiffs and Appellants.

Edward M. Picozzi for Defendant and Respondent.

*        *        *

Thomas and Renee Hafen, as trustees of the Hafen Trust (the Hafens), appeal from the trial court's attorney fee award in favor of Rhonda Nielsen. The Hafens contend the trial court abused its discretion by awarding Nielsen $65,898 of the $179,000 in fees she requested. Specifically, the Hafens argue the trial court abused its discretion in apportioning Nielsen's fees between her defense involving a fee-bearing agreement that the Hafens alleged created an equitable servitude on her property and her defense against the Hafens' claims involving prescription and an alleged equitable servitude arising from an agreement without a fee provision. In essence, the Hafens challenge the sufficiency of the evidence to support the trial court's order, and they attack in particular the credibility of Nielsen's attorney, Edward M. Picozzi, in attesting to his fee allocations for the work he performed. We affirm the order.

I

FACTUAL AND PROCEDURAL BACKGROUND

This action concerns adjoining, hilltop parcels in Trabuco Canyon, California. The Hafens own a single-family residence with panoramic views in all directions on one parcel, located at 30021 Canyon Creek Drive (30021). The best views from that residence are to the west across the undeveloped, adjacent parcel located at 30022 Canyon Creek Drive (30022). The only flat area readily suitable for building a home on 30022 is the portion nearest 30021. Development on this flat area would significantly impact the view west from the Hafens' home on 30021.

Nielsen purchased 30022 in May 2005 from Michael Meacher. The next month, in June 2005, Meacher faxed Nielsen a copy of a purported January 2005 agreement he entered with the Hafens (the Meacher agreement), calling for an exchange of the flat area on 30022 for an unspecified portion of the Hafens' property. The

2

Meacher agreement also referenced a 2001 agreement (the Moshenko agreement) between former owners of 30021 and 30022 that similarly called for a land-exchange between the two parcels to "keep" the views from each "unobstructed." The Moshenko agreement included an attorney fee provision; the Meacher agreement did not.

Nielsen refused to be bound by either agreement because the land exchange would preclude building a residence on her property and she knew nothing of the agreements before her purchase. The Hafens sued Nielsen in June 2005.

The operative second amended complaint alleged five causes of action against Nielsen on the theory both the Meacher agreement and Moshenko agreement were enforceable against her as equitable servitudes.[1] The first and second causes of action sought specific performance and declaratory relief regarding the land exchange and view easements described in the Meacher agreement. The third cause of action alleged the Hafens acquired a prescriptive easement for the nonexclusive use of 30022's flat area because the Hafens and their predecessors continually used the area for approximately 20 years. If the Meacher agreement's land exchange and view easements could not be enforced for any reason, the fourth and fifth causes of action sought specific performance and declaratory relief regarding the Moshenko agreements' view easements.

---

[1] "An equitable servitude is a restriction on the use of real property that is enforceable even though not imposed as a covenant in the manner provided by law. The doctrine of equitable servitudes arose as a means of giving effect to restrictions that did not meet the stringent legal standards required for covenants running with the land." (8 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 24:1 at p. 24–4.) When a covenant does not run with the land, it nonetheless may be enforced against a subsequent owner as an equitable servitude if (1) the subsequent owner took title with knowledge of the covenant's terms, and (2) it would be inequitable to permit the subsequent owner to avoid the restrictions the covenant imposed. (*Marra v. Aetna Constr. Co.* (1940) 15 Cal.2d 375, 378; *Richardson v. Callahan* (1931) 213 Cal. 683, 686–687.)

Following a bench trial, the trial court declined to enforce either the Moshenko agreement or the Meacher agreement as an equitable servitude and entered judgment in Nielsen's favor. In its statement of decision, the trial court found Nielsen had no actual or imputed knowledge of the Meacher agreement and the evidence did not create a duty for her to investigate the existence of an agreement regarding view easements or a land exchange. The trial court also found that (1) the Meacher agreement could not be enforced as a covenant running with the land because the parties failed to record it and (2) the Moshenko agreement could not be enforced because the Meacher agreement rescinded it. The trial court made no express ruling in its statement of decision on the Hafens' prescriptive easement cause of action.

The Hafens appealed, omitting any challenge regarding their prescriptive easement claim, and we affirmed the judgment in an unpublished opinion. (*Hafen v. Nielsen* (G043337, June 30, 2011) [nonpub. opn.] (*Hafen I*).)

Based on the Moshenko agreement attorney fees provision, Nielsen filed a motion to recover the attorney fees she incurred defending the Hafens' claims. The trial court granted the motion, but awarded just $1,050 of the $179,900 Nielsen sought, apportioning three hours of attorney time billed at Nielsen's lawyer's $350 hourly rate. The court's minute order explained, "The only basis for recovery of attorney fees is contained in the 2001 Moshenko agreement. That agreement had been expressly rescinded and never was recorded so could not be enforced against [Nielsen]. The fees attributable to that agreement must be apportioned."

When Nielsen appealed, we affirmed the necessity of apportioning her attorney fees to (1) issues relating exclusively to the Moshenko agreement or (2) issues common to the Moshenko agreement and the Meacher agreement or the prescriptive

4

easement claim. (*Hafen v. Nielsen* (G044204, Nov. 28, 2011) [nonpub. opn.], p. 13 (*Hafen II*).) We reversed the trial court's apportionment of just $1,050 to these matters because the court mistakenly concluded the absence of a formal covenant running with the land virtually eliminated attorney fees.

The trial court had reasoned, "'This issue [] I think could have been done in a half hour. [¶] . . . [¶] As soon as someone told me, hey, there's a statute that says covenants running with the land have to be recorded, that's the end of [that aspect of] the case. [¶] . . . [¶] The amount of time you would have to address [the Moshenko agreement claims] compared to the rest of the case is almost zero. It's very minimal. That cause of action would have been out in a minute.'" (*Hafen II*, *supra*, at p. 11.) We explained, however, that an agreement running with the land, although unrecorded, may nevertheless be enforced as an equitable servitude, provided the subsequent owner took title with knowledge of the covenant's terms and it would be inequitable to permit the subsequent owner to avoid the covenant's restrictions. (*Id.* at p. 12; see fn. 1 *ante*.)

On remand to reapportion the fees, the former trial judge had retired, leaving the new judge in, as he noted, "the unenviable position of ruling on a motion for attorney fees on a case in which it was never involved pre-judgment." The parties submitted their briefing and declarations concerning fees, but the trial court had to continue the hearing because Nielsen's attorney, Edward Picozzi, forgot to attach his billing statements. After the parties submitted supplemental declarations and briefing, including Picozzi's billing statements, the trial court concluded in its tentative decision that Nielsen was entitled to approximately $66,000 of her nearly $180,000 in claimed fees, but the tentative awarded no fees for time spent in trial because Picozzi "provide[d] absolutely no hours [apportioning his trial time] despite a second chance to do so via the

5

Supplemental Declaration." At the hearing, the trial court granted Picozzi's request to file a further declaration, which he did, and the parties again briefed the issue, and the trial court re-heard the matter, taking it under submission.

The trial court issued a very detailed order denying Nielsen her fees during trial, but awarding nearly $66,000 in pretrial fees supported by Picozzi's billing statement and declarations.[2] The court's order explained: "The Court finds a total of 188.28 hours were spent on issues relating exclusively to the 2001 [Moshenko] Agreement and issues common to the 2001 [Moshenko] Agreement and either the 2005 [Meacher] Agreement or the prescriptive easement claim. The court also finds Mr. Picozzi's hourly rate of $350 an hour over the course of five years to be very reasonable. Therefore, the total amount of fees allowed is $65,898.00."

The trial court meticulously specified the allocations for which it allowed and disallowed fees. For example, "[a]s to procedural issues such as Mediation[,] Status Conferences, CMCs, Telephone Conferences with Client, Telephone Conferences with Counsel: The Court will allow all time and fees requested by Mr. Picozzi, . . . since these things pertain to the entire case, and allocation is absolutely impossible. [¶] Mediation: 10.2 [hours] [¶] Status Conferences, MSC: 58.20+6.5 = 65.70 [¶] Telephone Conferences w/ client: 14.95 [¶] Telephone Conferences w/ Counsel: 14.85." (Original underlining.)

The other categories in which the court allowed fees consisted of: "As to the Plaintiff's Ex Parte TRO and Preliminary Injunction Efforts: The Court will also allow the 46.7 hours as sought by Mr. Picozzi. If this TRO was sought at the outset of the litigation, Plaintiffs would have used the existence of both agreements to show the

_____

2     The trial court also awarded Nielsen $19,250 in fees for her appeal in *Hafen II*, and the Hafens do not challenge that fee award.

6

existence of an easement. This is something which does not appear easy to allocate. [¶] . . . [¶] <u>Time for Site Inspection</u> in the amount of 10.88 hours is allowed as viewing the land would go to all causes of action. . . . [¶] <u>As to Depositions</u>, Mr. Picozzi suggests 58 hours were spent. He essentially guesses at how much time is spent on the fee-allowing agreement and cross-over issues. He suggests 70 percent, but this is a guess. Because Mr. Picozzi does not give a number of specific hours, the Court will allow 25 hours time — which represents about half of the time sought." (Original underlining.)

The trial court rejected Nielsen's fee request in the following categories: "<u>As to Legal research</u>, it is difficult to see how very many issues would overlap. It should not have taken 14.6 hours to discover the 2001 [Moshenko] Agreement (which allowed for fees) was essentially rescinded by virtue of the 2005 [Meacher] Agreement being signed. As research has not been broken down specifically to 2001 [Moshenko] Agreement and overlap, the Court will deny the request for 14.6 hours. [¶] . . . [¶] <u>As for time spent for trial</u>, Mr. Picozzi provides absolutely no meaningful evidentiary support for fees for time spent in trial, despite various opportunities to do so via Supplemental Declarations. Mr. Picozzi does not support his claim for apportionment with anything other than his own recollection and figures. There is no real reference to billing statements, court transcript[s], etc. Therefore, fees for trial are not allowed." (Original underlining.)

Concluding its order, the trial court explained: "Adding up all the hours, the Court arrives at the sum of 188.28 total hours spent on fee-allowing agreement and cross-over issues which are so inextricably linked that allocation is impossible." The trial court awarded Nielsen attorney fees at $350 an hour multiplied by 188.28 hours for a

total of $65,898, and the Hafens now appeal. Nielsen does not appeal the hours disallowed.

II

DISCUSSION

A.    *Standard of Review*

As we noted in *Hafen II*, the standard of review is well-established. "'California courts have long held that trial courts have broad discretion in determining the amount of a reasonable attorney's fee award. This determination is necessarily ad hoc and must be resolved on the particular circumstances of each case.' [Citation.] In exercising its discretion, the trial court may accordingly 'consider all of the facts and the entire procedural history of the case in setting the amount of a reasonable attorney's fee award.' [Citation.]" (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1394.) "An attorney fees award '"will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence."'" (*Ibid.*)

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action. [Citations.]" (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 (*Reynolds*).) Accordingly, a prevailing party seeking contractual attorney fees generally must apportion fees between claims supporting the recovery of attorney fees and those that do not. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1603-1604 (*Amtower*).)

8

But a litigant's "joinder of causes of action should not dilute its right to attorney's fees. Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed. All expenses incurred with respect to [issues common to all causes of action] qualify for award." (*Reynolds*, *supra*, 25 Cal.3d at pp. 129-130.) "Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion." (*Amtower*, *supra*, 158 Cal.App.4th at p. 1604; *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555.)

As the trial court observed, "[i]n challenges to the reasonableness of the number of hours billed, 'it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence.'" (*Premier Medical Management Systems, Inc. v. Caifornia Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 (*Premier*).) The Hafens challenge the number of hours the trial court awarded in every category it identified, and we examine each of these challenges in turn.

B.      *Procedural Issues*

The Hafens challenge the hours the trial court grouped together as "procedural issues," including mediation, status conferences, and telephone conferences with the client and opposing counsel. The court concluded it would "allow all time and fees requested by Mr. Picozzi, . . . since these things pertain to the entire case, and allocation is absolutely impossible." The Hafens argue the court abused its discretion because "the billing statements for these procedural matters do not specify which issues were addressed at any of these proceedings." Picozzi, however, pared inapplicable time

from his billing for each category and attested the remainder related to the Moshenko agreement or common issues.

For example, he did not seek fees for 4.8 hours he spent in mediation and preparation for the mediation on the prescriptive easement claim, nor 1.2 hours researching issues related to the Meacher agreement, nor 2.1 hours related to a real estate agent's alleged written disclosure of the Meacher agreement. He also explained Nielsen was a busy attorney herself and that most of the time he spent on the phone with her over the five years of litigation was devoted *not* to discussing particular legal issues, but rather to scheduling meetings, site visits, conferences, depositions, court dates, and other issues common to the entire case. Picozzi explained the same was true in his telephone conferences with opposing counsel. Picozzi nevertheless was able to specify that approximately five of the nearly 20 hours he spent on the phone with counsel and client did not pertain to scheduling or issues otherwise common to the Moshenko agreement, and therefore he did not seek fees for them. We observe that 15 billable hours on the telephone over five years of litigation does not seem incredible or inherently improbable.

"The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence," and "a trial court's credibility findings cannot be reversed on appeal unless that testimony is incredible on its face or inherently improbable." (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 (*Consolidated*); see, e.g., *Diamond Woodworks, Inc. v. Argonaut Ins. Co.* (2003) 109 Cal.App.4th 1020, 1045 [where jury credited attorney's testimony he apportioned fees and all were reasonable and necessary, "we do not reassess such matters"]; overruled on another ground in *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1182-1183.) Here, Picozzi's declaration, billing statements, and explanation that he

10

pared some procedural fees and the rest were incurred on common issues all support the trial court's award.

In particular, the Hafens' appellate challenge to the mediation fees illustrates the soundness of the trial court's ruling. The Hafens complain that even after striking out numerous hours related to the mediation, Picozzi still billed 10.2 hours for mediation-related time though "the entire mediation took only eight hours" and Picozzi did not explicitly segregate time spent in the mediation on the Moshenko agreement or common issues.

But the Hafens ignore the requisite preparation and travel time for mediation and, as they acknowledged below, "[t]ime relating to mediation is spent in settling *the case*, not litigating specific issues." (Italics added.) The Hafens sought on this ground to deny Nielsen *any* fees for mediation, but the trial court reasonably could conclude the mediation — like the telephone calls and status conferences — was a procedural event that necessarily arose in litigating the claims the Hafens chose to assert, and therefore these procedural matters were common to all the claims. Put another way, Picozzi would have had to prepare for, travel to, and attend mediation even if the Hafens had *only* asserted a claim based on the fee-bearing Moshenko agreement, and therefore the scheduling and calls necessary to arrange these and other proceedings was common to all the claims. The trial court also reasonably could conclude it was purely speculative the mediation would have taken substantially less time had it only involved the Moshenko agreement. The gravamen of the Hafens' suit was to preserve their unobstructed hilltop views, an objective common to all their claims, and the trial court therefore reasonably could conclude Nielsen was entitled to fees for time spent attempting to meet that objective in mediation. We discern no abuse of discretion.

C.    *TRO and Preliminary Injunction Efforts*

The Hafens contend the trial court erred in awarding Nielsen fees for 46.7 hours of her attorney's time preparing for and defending against their efforts to obtain a temporary restraining order and preliminary injunction. The trial court inferred that because "this TRO was sought at the outset of the litigation, Plaintiffs would have used the existence of both agreements to show the existence of an easement. This is something which does not appear easy to allocate." To the contrary, according to the Hafens, "the TRO and Preliminary Injunction motion dealt exclusively with the Meacher Agreement as it involved the exchange aspects of that agreement and Plaintiff's right to use the property subject to the Meacher Agreement and only the Meacher Agreement." They insist "it would have been a simple matter for Nielsen to attach a copy of the Hafens' motion for TRO/Preliminary Injunction to support her claim the motion was based on 'issues exclusive to either the fee allowing agreement or issues common to both agreements' and that her attorney [properly] expended a whopping 46.7 hours defending those 'intertwined' claims . . . ."

To illuminate and correct this asserted error, the Hafens request on appeal that we take judicial notice of their TRO and preliminary injunction motion, which they omitted in the record on appeal because they did not provide it to the trial court as a basis to reject Nielsen's fee request. We decline the request for judicial notice because it would be inappropriate to receive new evidence on appeal to consider reversing the trial court based on evidence the Hafens omitted. Moreover, as noted, Picozzi's declaration and billing statements averring the manner in which he spent his time constituted substantial evidence supporting the trial court's award because it was for the trial court to evaluate his credibility. (*Consolidated*, *supra*, 204 Cal.App.4th at p. 201.) Because an

12

appellate court does not reweigh evidence in reviewing an attorney fee award (*Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587), we cannot say the trial court abused its discretion in awarding fees for the TRO and injunction motion based on Picozzi's declaration.

At oral argument on appeal, the Hafens insisted their TRO and injunction request was aimed predominantly at preserving the garden wall described in the Meacher agreement, and therefore did not implicate the Moshenko agreement, and the trial court should not have awarded fees. But they acknowledge in their opening brief that the TRO and injunction motion "involved the exchange aspects" of the Meacher agreement, which in turn was premised on keeping intact the Moshenko agreement's view and land exchange provisions. The trial court therefore reasonably could infer the purpose of the garden wall was to safeguard these same view and land exchange interests.

Thus, the strong demarcation the Hafens now draw between the Meacher agreement and the Moshenko agreement is not as impervious as they insist. Both agreements pertained primarily to the view easements created on the two parcels, and the Hafens themselves argued throughout the litigation that a prospective buyer considering the property would not be surprised at the existence of a view easement. In particular, they insisted circumstantial evidence common to both agreements put Nielsen on "inquiry notice" concerning a view easement. Under the Hafens' theory of the case, a duty to inquire about a view easement arose in part from the proximity and layout of the parcels, the setting so suggestive of views as a priority, clues like the garden wall from which one might infer the mutual importance accorded the view, and the Hafens' assertedly prescriptive activities to maintain their view.

13

While this manner of viewing the evidence did not persuade the court at trial that Nielsen actually received notice of either view agreement, the court in awarding fees reasonably could conclude Picozzi had to prepare to meet these arguments and that he reasonably did so from the outset of the case in opposing the TRO and preliminary injunction. In other words, the circumstantial evidence supporting the existence of a view easement, whether embodied in the Moshenko agreement or the Meacher agreement, was intertwined and common to both agreements. And the legal theory for enforcing both agreements — as an equitable servitude based on notice inherent in the property circumstances — was the same.

The Hafens also expressly alleged the Moshenko agreement as an alternative basis for their complaint. Given these circumstances, the trial court reasonably could infer on the record before it that the Moshenko agreement was implicated in their TRO and injunction request to maintain the status quo on the property. The trial court therefore reasonably could conclude "[t]his is something which does not appear easy to allocate" in awarding fees. In any event, as noted, the trial court's credibility determination on the parties' competing declarations concerning the basis of the TRO and injunction motion suffices by itself to support the court's fee award.

D.    *Deposition Hours and Picozzi's Credibility Generally*

The Hafens argue that because the trial court labeled as a mere "guess" Picozzi's estimate he spent 70 percent of his 58 hours in deposition time on the Moshenko agreement or overlapping issues, the court should have denied these attorney fees altogether instead of awarding Nielsen nearly half — 25 hours. More generally, the Hafens argue the trial court should have taken a stricter view of Picozzi's claims because it had not presided over the trial and because, for example, once Picozzi provided his

14

billing statements, he revised his initial fee request downwards, suggesting he was not credible in previously declaring his fee request reflected his best estimate of his allocation of time.

These matters, however, were entirely within the trial court's purview to decide. The Hafens point out the trial court is not bound to accept an attorney's itemization of time spent in a billing affidavit (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682), and that the court may "exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside" (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 689). But these very quotations confirm the trial court's discretion to weigh the evidence before it, including an attorney's declarations and billing statements. These credibility determinations are for the trial court to decide and furnish no grounds for reversal. (*Consolidated*, *supra*, 204 Cal.App.4th at p. 201.)

III

DISPOSITION

The trial court's fee order is affirmed. Respondent is entitled to her costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.

15